Mr. Michael J. Wasserman Arkansas Hotels and Entertainment, Inc. 391 CR 214 Gainesville, Texas 76240
Dear Mr. Wasserman:
You have requested certification, pursuant to A.C.A. § 7-9-107, of the popular name and ballot title for a proposed amendment to the Arkansas Constitution. You have submitted four previous popular names and ballot titles for similar measures, three of which I rejected in Ops. Att'y Gen. Nos. 2006-053, 2006-037 and 2006-009, due to unresolved ambiguities in the text of each measure. This Office certified your fourth submission on March 17, 2006, as evidenced by Op. Att'y Gen. 2006-046. You have since elected to make changes to your measure and have submitted a revised popular name and ballot title for my certification. I am issuing this opinion solely to consider certifying a ballot title and popular name for the text of your measure. Given that this office has no authority to consider the merits of any measure, neither certification nor rejection of your proposed popular name and ballot title reflects my view regarding the substance of your proposal.
Your proposed popular name and ballot title are as follows:
 Popular Name AN AMENDMENT TO ALLOW ARKANSAS HOTELS AND ENTERTAINMENT, ETC. TO OWN AND OPERATE SEVEN CASINO GAMING ESTABLISHMENTS ONE EACH IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN, BOONE, AND JEFFERSON COUNTIES; AND TO ESTABLISH THE ARKANSAS EDUCATIONAL TRUST FUND AND THE ARKANSAS GAMING COMMISSION *Page 2 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO: 1) AUTHORIZE SEVEN CASINO GAMING ESTABLISHMENTS, TO BE OWNED AND OPERATED BY "ARKANSAS HOTELS AND ENTERTAINMENT, INC." (A PRIVATE FOR-PROFIT CORPORATION), ONE EACH TO BE LOCATED IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN, BOONE AND JEFFERSON COUNTIES, THE OPERATIONS OF WHICH SHALL BE AUDITED BY THE ARKANSAS GAMING COMMISSION FOR THE SOLE PURPOSE OF INSURING THAT CASINO TAXES ARE PAID, BUT WHICH SHALL NOT OTHERWISE BE REGULATED BY THE GAMING COMMISSION; 2) PROHIBITING THE GENERAL ASSEMBLY, THE ARKANSAS GAMING COMMISSION, AND ANY POLITICAL SUBDIVISION OF THE STATE FROM ENACTING ANY LEGISLATION, RULES OR REGULATIONS REGARDING CASINO GAMING; 3) PROHIBITING CASINO GAMING AT ANY OTHER THAN THE LOCATIONS OPERATED BY ARKANSAS HOTELS AND ENTERTAINMENT, INC.; 4) PROHIBITING PERSONS UNDER THE AGE OF 21 FROM PARTICIPATING IN CASINO GAMING; 5) REQUIRING THAT THE GROSS GAMING REVENUE (AS DEFINED) OF A CASINO SHALL BE SUBJECT TO THE GROSS RECEIPTS TAX LEVIED BY THE TAXING JURISDICTIONS WHERE A CASINO IS LOCATED AT THE SAME RATE AS FOR BUSINESSES GENERALLY, AND THE PORTION OF THE TAX PAID TO THE STATE SHALL BE ALLOCATED AS FOLLOWS: 80% TO THE STATE'S *Page 3 
GENERAL REVENUE FUND ACCOUNT OF THE STATE APPORTIONMENT FUND FOR THE PURPOSE OF ATTEMPTING TO REDUCE OR ELIMINATE THE GROSS RECEIPTS TAX ON FOOD PURCHASED IN A RETAIL FOOD STORE, WITH ANY EXCESS RETURNED TO THE GENERAL REVENUE FUND ACCOUNT OF THE STATE APPORTIONMENT FUND; 15% TO THE ARKANSAS EDUCATIONAL TRUST FUND; 5% TO THE STATE'S GENERAL REVENUE FUND ACCOUNT OF THE STATE APPORTIONMENT FUND FOR THE OPERATIONAL COSTS OF THE ARKANSAS GAMING COMMISSION; 6) PROHIBITING ANY OTHER STATE OR LOCAL TAXES, FEES OR ASSESSMENTS ON THE FURNITURE, FIXTURES, EQUIPMENT, PROPERTY, BUSINESS OPERATIONS, GROSS REVENUES, GROSS GAMING REVENUES, OR INCOME OF ARKANSAS HOTELS AND ENTERTAINMENT, INC., DERIVING FROM OR USED IN CASINO GAMING WHICH ARE NOT LEVIED AGAINST BUSINESSES GENERALLY; 7) ESTABLISHING THE ARKANSAS EDUCATIONAL TRUST FUND AS AN ACCOUNT OUTSIDE OF THE STATE TREASURY TO BE HELD IN THE NAME OF THE ARKANSAS DEPARTMENT OF EDUCATION TO BE ALLOCATED AND ADMINISTERED BY THE DEPARTMENT OF EDUCATION, TO PROVIDE GRANTS TO QUALIFIED HIGH SCHOOL GRADUATES FOR POST-SECONDARY EDUCATION; DEFINING POST-SECONDARY EDUCATION AS THE PURSUIT OF AN UNDERGRADUATE DEGREE AT A PUBLIC OR PRIVATE UNIVERSITY, COLLEGE, COMMUNITY COLLEGE OR A DEGREE FROM A VOCATIONAL-TECHNICAL SCHOOL; REQUIRING NOT LESS THAN 24% OF THE EDUCATIONAL TRUST FUND TO BE USED TO EXPAND BOTH PUBLIC AND PRIVATE PRE-KINDERGARTEN EDUCATIONAL PROGRAMS AND TUTORIAL PROGRAMS FOR PRIMARY AND SECONDARY STUDENTS WHETHER THEY BE IN PUBLIC OR PRIVATE SCHOOLS; GIVING THE ARKANSAS DEPARTMENT OF EDUCATION SOLE AUTHORITY OVER THE TRUST FUND AND THE RIGHT TO SET RULES AND REGULATIONS PERTAINING TO ITS DISTRIBUTION; 8) CREATING THE FIVE-MEMBER ARKANSAS GAMING COMMISSION, WHICH MEMBERS SHALL BE APPOINTED BY THE GOVERNOR WITH THE ADVICE AND CONSENT OF THE SENATE, WITH QUALIFICATIONS AND TERMS (NOT TO EXCEED FOUR YEARS), SET BY THE GENERAL ASSEMBLY, AND WHO SHALL: 1) ESTABLISH AND OPERATE THE STATE LOTTERY; AND 2) AUDIT THE OPERATIONS OF THE *Page 4 
CASINOS FOR THE SOLE PURPOSE OF INSURING THAT ALL CASINO TAXES ARE PAID; PROVIDING FOR JUDICIAL REVIEW OF THE COMMISSION'S DECISIONS OR ACTIONS; PROVIDING THAT THE GENERAL ASSEMBLY SHALL APPROPRIATE SUCH FUNDS AND PASS SUCH LAWS AS IT DEEMS NECESSARY FOR THE OPERATION OF THE COMMISSION; 9) ALLOWING A CASINO TO OPERATE ANY DAY FOR ANY PORTION OF THE DAY; 10) ALLOWING THE SELLING OR FREE FURNISHING OF ALCOHOLIC BEVERAGES IN CASINOS DURING ALL HOURS THEY OPERATE BUT OTHERWISE REQUIRING ADHERENCE TO ALL ALCOHOLIC BEVERAGE CONTROL BOARD REGULATIONS; 11) PERMITTING THE SHIPMENT OF GAMBLING DEVICES INTO AUTHORIZED COUNTIES FOR PURPOSES OF FEDERAL LAW; 12) RENDERING THE PROVISIONS OF THE AMENDMENT SEVERABLE; 13) DECLARING INAPPLICABLE ALL CONSTITUTIONAL PROVISIONS AND LAWS TO THE EXTENT THEY CONFLICT WITH THE AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neithercertification nor rejection of a popular name and ballot title reflectsmy view of the merits of the proposal. This Office has been given noauthority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law." Kurrus v. Priest, 342 Ark. 434,29 S.W.3d, 669 (2000); Donovan v. Priest, 326 Ark. 353, 931 S.W.2d 119
(1996); and Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this *Page 5 
review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that thepopular name and ballot title honestly, intelligibly, and fairly setforth the purpose of the proposed amendment or act. See Arkansas Women'sPolitical Caucus v. Riviere, 283 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277,285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418,798 S.W.2d 34 (1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) *Page 6 
honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71
(1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
Among these ambiguities are the following:
 1. You refer in your ballot title to the General Assembly's establishment of a "state lottery" and yet include in the text of your measure no provision for the establishment of a lottery. Indeed, in Section 6.1 of your proposed amendment you indicate that the gaming activities authorized in your measure "shall not be classified as a lottery under Article 19, § 14 of the Arkansas Constitution." Moreover, at no point in the text of your measure do you acknowledge that Article 19, § 14, as amended by Amendment 87, expressly authorizes the conduct of a lottery under specified conditions. If your measure would significantly change those constitutionally sanctioned specified conditions, the voters must be apprised of that fact. As noted above, if your proposed measure would effect a significant change in existing law, both the text of your measure and its ballot title must reflect the fact of this change. Your measure is further confusing in that it declares, on the one hand, that the gaming it proposes to authorize will not constitute a lottery under Article 19, § 14, Section 6.1, and, on the other hand, that the provisions of Article 19, § 14 authorizing the restricted conduct of lotteries will not apply to your proposed amendment, Section 9.1. The confusion on this matter could give a voter serious grounds for reflection. I cannot accurately summarize your proposal until this ambiguity is resolved. *Page 7 
 2. Section 3.2 is unclear in providing that "no person having any interest in any casino or in any other gaming or pari-mutual [sic: "pari-mutuel"] operations in this or any other State shall be eligible for appointment to the Arkansas Gaming Commission." As my immediate predecessor pointed out to you in Op. Att'y Gen. No. 2006-053 in reviewing a similar provision in one of your previous submissions: "The term `gaming interest' is unclear, and, as a consequence, I cannot adequately summarize this condition for the voters."
 3. Section 3.2 of your proposed amendment would invest the legislature with certain limited authority to establish the "terms and qualifications" of members of the Arkansas Gaming Commission. In this regard, I will echo the following criticism offered by my immediate predecessor in Op. Att'y Gen. No. 2006-037 in response to one of your previous submissions:
 The General Assembly is to set the terms and qualifications of the Commissioners, has some role in the appointment and removal of commissioners, and must appropriate funds necessary for its operation. . . . Your measure is unclear, however, as to whether the General Assembly would retain its authority to adopt other laws regarding the Commission or whether this authority might be seen as the prohibited regulation of "casino gaming." Unclear for example, is whether the General Assembly would retain authority to set salaries of Commissioners or staff, or to impose legal requirements on the Commission that apply to other state agencies.
 This criticism continues to apply to your current submission.
 4. Section 3.3 of your proposed amendment provides:
 The General Assembly shall appropriate such funds and pass such laws as it deems necessary for the operation of the Arkansas Gaming Commission. However, [t]he General Assembly, the Arkansas Gaming Commission, and any Political Subdivision of the State, shall not enact any legislation, rules or regulations regarding the operation of *Page 8 
casino gaming defined in Section 2 of this Amendment except as specifically authorized by this amendment.
 It is unclear how the proscription against the legislature's or any other entity's enacting laws, rules or regulations "regarding the operation of casino gaming" can be reconciled with this section's acknowledgment of the General Assembly's authority to "pass such laws as it deems necessary for the operation of the Arkansas Gaming Commission." Without textual clarification, I am consequently unable to summarize the substance of your proposed amendment in a ballot title.
 5. Section 3.5 of your proposed amendment provides as follows:
 Any person aggrieved by a final decision, order, or the failure or refusal of the Arkansas Gaming Commission to act, may obtain a judicial review in the Circuit Court of Pulaski County or in the county where the aggrieved party is located.
 As my predecessor noted in response to a similar provision contained in one of your previous submissions:
 It is unclear in your proposed amendment precisely what sorts of "final decisions" or "orders" the Commission will be authorized to make or what sort of "action" the Commission might be obligated to undertake. . . . [Y]our proposed measure does not clearly state what regulatory authority the Commission would possess and what controls the General Assembly might exercise over that regulatory authority. Without clarification of these questions, I cannot accurately summarize your measure in a ballot title.
 In this regard, I will note that the only apparent authority expressly granted to the Commission is to conduct an annual audit of the proposed casinos. Section 3.2. The measure remains unclear as to what decisions, orders or actions the Commission might be authorized to undertake, leaving me unable to summarize the measure in a ballot title. *Page 9 
 6. Your ballot title expresses your proposed amendment as designed "for the purpose of attempting to reduce or eliminate the gross receipts tax on food purchased in a retail food store." However, the text of your measure declares its ambition to be "to reduce the State's gross receipts tax on prescription medications and on food purchased in a retail food store." Section 4.2(a) (emphasis added). Given the discrepancy between the text of your measure and your summary of its impact in your ballot title, I am unable to determine your intent and am consequently unable to summarize its substance.
Given my focus on ambiguities in the text of your proposed amendment, I cannot now assess the sufficiency of your proposed popular name. However, if you choose to amend and resubmit your proposed measure, you should take care to ensure that your proposed popular name does not so closely track the popular name just recited that the voters might confuse the two measures.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See,e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v.Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities. *Page 10 
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
 DUSTIN McDANIEL, Attorney General *Page 1